STATE OF LOUISIANA

COURT OF APPEAL, THIRD CIRCUIT

06-1118


METAL COATINGS, L.L.C., et al

VERSUS

PETROQUIP ENERGY SERVICES, L.P.


**************
APPEAL FROM THE
FIFTEENTH JUDICIAL DISTRICT COURT
PARISH OF LAFAYETTE, DOCKET NO.  2005-0730
HONORABLE EDWIN D. RUBIN, DISTRICT JUDGE


**************
**SYLVIA R. COOKS**
**JUDGE**
**************


Court composed of Sylvia R. Cooks, Oswald A. Decuir, and Billy H. Ezell, Judges.


**AFFIRMED, IN PART; AND REVERSED, IN PART.**

**R. Chadwick Edwards, Jr.**
**Edwards & Edwards**
**114 East Lafayette Street**
**Post Office Box 217**
**Abbeville, Louisiana 70511-0217**
**(337) 893-2884**
**COUNSEL FOR APPELLEE:**
    **Metal Coating, L.L.C. and**
    **Wade Rebardi**

**J. Lomax Jordan**
**Post Office Box 4321**
**1817 West University Avenue**
**Lafayette, Louisiana 70506**
**(337) 233-9984**
**COUNSEL FOR APPELLANT:**
    **Petroquip Energy Services, L.P.**

**COOKS, Judge.**

## STATEMENT OF THE CASE

This is a suit on an open account. Metal Coatings, L.L.C. sued Petroquip Energy Services, L.P. for the balance of $28,902 for metal coating services. Petroquip answered the petition and asserted, in the form of a reconventional demand, a claim for fraud and/or deceptive practices by Metal Coatings. Petroquip alleged Metal Coatings overcharged it for painting services. Petroquip also asserted a third party demand against Wade Rebardi, a part-owner in Metal Coatings and an employee of Petroquip, alleging he breached his contract of employment. Metal Coating and Rebardi filed a motion for summary judgment on the open account and a second motion for summary judgment seeking the dismissal of the reconventional and third party demand. The trial court granted the motion for summary judgment in favor of Metal Coatings on the open account and rendered judgment in the amount of $28,902, and $5,000 attorney fees. The trial court denied Metal Coatings' motion for summary judgment on the reconventional and third party demand. Both parties appealed. For the reasons assigned below, we affirm the decision of the trial court granting the motion for summary judgment in favor of Metal Coatings and reverse the decision of the trial court denying Metal Coatings' motion for summary judgment finding no genuine dispute as to the issues raised in Petroquip's reconventional and third party demands.

## STATEMENT OF THE FACTS

Petroquip Energy Services is an oil and gas service company engaged in the manufacture of parts used in well completion. All parts manufactured by Petroquip must be painted and baked prior to sale and delivery. The record indicates Petroquip was experiencing some problems keeping qualified supervisory personnel. The

1

testimony also establishes Petroquip had problems in the manufacturing department and was experiencing trouble producing parts in a timely and cost efficient manner. In December 2003, Bill Darnell, president of Petroquip, hired Wade Rebardi as the Operations Manager. Darnell became aware Rebardi was part-owner of Metal Coatings, a company engaged in providing coating services for manufactured parts. At that time, Petroquip's coating work was being done by Webco. Darnell was dissatisfied with Webco pricing and he authorized Rebardi to contract with Metal Coatings to provide coating services for the parts manufactured by Petroquip.

Metal Coatings provided coating services to Petroquip from January 2004 until September 2004. Many of the Metal Coatings invoices generated during this time period reflect the work to be performed for Petroquip was designated as "hot," meaning the coating had to be completed on an expedited schedule, sometimes overnight. In fact, James Steen, co-owner of Metal Coatings, testified 98% of Petroquip's work was designated as "hot." Rebardi testified Petroquip's manufacturing department did not produce the part timely and would be unable to fulfill its contract for delivery of the part unless the coating work was done overnight. The cost for expedited service is higher.

Sometime in September a conflict developed between Fred Wong, Petroquip's engineering manager, and Rebardi. Rebardi was terminated by Darnell but his salary and benefits were paid until he obtained other employment. Rebardi's replacement, Ty Livingston, confirmed Petroquip parts were not being manufactured properly or timely. He fired all manufacturing personnel and hired an all new staff. He then examined the cost Petroquip was paying to Metal Coatings for coating services and concluded it was too high. The payments on invoices ceased and suit was instituted by Metal Coatings for the balance due on the account. Petroquip filed a

2

reconventional demand against Metal Coatings for fraud and deceptive practices for overcharging on invoices. Petroquip filed a third party demand against Rebardi for breach of the contract of employment. Particularly, Petroquip contends Rebardi's contract requires its employees to "give his best efforts to promote advance in the financial and technical side of the company." Petroquip contends Rebardi was responsible for approving invoices submitted by Metal Coatings, which charges were higher than competitor prices for the same services. Metal Coatings and Rebardi contend the work done for Petroquip was almost always "hot" or marked for expedited delivery and the prices charged were in fact competitive with other companies providing the same expedited services.

## LAW AND DISCUSSION

Appellate courts review summary judgments *de novo* under the same criteria that governed the trial court's consideration of whether summary judgment is appropriate. *Chrysler Financial Company, L.L.C. v. Gene Ducote Automotive, L.L.C.*, 04-1223 (La.App. 5 Cir. 3/1/05), 900 So.2d 119. A motion for summary judgment is properly granted only if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to material fact and that the mover is entitled to judgment as a matter of law. La.Code Civ.P. art. 966. The statute governing an open account is contained in La.R.S. 9:2781, which provides, in relevant part:

> A. When any person fails to pay an open account within thirty days after the claimant sends written demand therefor correctly setting forth the amount owed, that person shall be liable to the claimant for reasonable attorney fees for the prosecution and collection of such claim when judgment on the claim is rendered in favor of the claimant. Citation and service of a petition shall be deemed written demand for the purpose of this Section. If the claimant and his attorney have expressly agreed that the debtor shall be liable for the claimant's attorney fees in a fixed or determinable amount, the claimant is entitled to that amount when judgment on the claim is rendered in favor of the claimant.

3

Receipt of written demand by the person is not required.

> B. If the demand is forwarded to the person by first class mail to his last known address, a copy of the demand shall be introduced as evidence of written demand on the debtor.

> C. If the demand is made by citation and service of a petition, the person shall be entitled to pay the account without attorney fees by delivering payment to the claimant or the claimant's attorney within ten days after service of the petition in city court and fifteen days after service of the petition in all other courts.

In order to prevail in a suit on an open account, the creditor must first prove the account by showing that the record of the account was kept in the course of business and by introducing evidence regarding its accuracy. Once a prima facie case has been established by the creditor, the burden shifts to the debtor to prove the inaccuracy of the account or to prove the debtor is entitled to certain credits. *Jacobs Chiropractic Clinic v. Holloway,* 589 So.2d 31 (La.App. 1 Cir. 1991). Petroquip does not dispute that Metal Coatings provided coating services on a credit account over a period of months. Purchase orders in the amount of $51,165.19 are contained in the record. Petroquip paid $22,263.19 of the total amount leaving a balance of $28,902. Petroquip does not dispute the accuracy of the credit account, but asserts, as a defense, that Metal Coating engaged in fraud and deceptive practices by overcharging for coating services. Petroquip also alleges Rebardi, as both an employee of Petroquip and co-owner of Metal Coatings, had an inherent conflict of interest when he authorized the payment of the allegedly inflated invoices. Petroquip contends Rebardi's responsibility under his contract of employment was to further the financial interest of Petroquip. Petroquip styled its defense to the suit on the open account as a reconventional demand and third party claim. Metal Coatings then filed a motion for summary judgment on the claims. The essential issue in this case is whether the amount charged by Metal Coatings was fair reasonable and legally chargeable or

4

whether Rebardi, as a co-owner of Metal Coatings, engaged in deception and fraud in overcharging Petroquip at an unconscionable rate to further his own company's interest.

Under La.Code Civ.P. art. 966 the moving party on a summary judgment bears the burden of proving that there are no genuine issues of material fact. Once the mover makes a prima facie showing, the burden shifts to the nonmover to rebut the showing made by the mover. *Townley v. City of Iowa*, 97-493 (La.App. 3 Cir. 10/29/97), 702 So.2d 323. In support of its motion for summary judgment, Metal Coatings offered the deposition testimony of the two co-owners, Rebardi and James Steen. Both Rebardi and Steen testified the amount charged by Metal Coatings was in keeping with charges for expedited services. They testified Petroquip work orders called for expedited delivery. In fact, Steen testified 98% of Petroquip's work was overnight. Sometimes the parts were delivered as late as 7:00 p.m. for completion by the next morning. The parts received from Petroquip were just off the assembly line and were often so hot they had to use insulated gloves. Steen testified Metal Coatings would process Petroquip's work with other customers in an effort to reduce costs. Steen stated the price for expedited delivery was higher than for work done on a normal delivery schedule. Rebardi testified Petroquip's manufacturing process was always behind schedule and the manufacturing equipment was always broken. Due to manufacturing delays the parts had to be coated overnight in order to meet Petroquip's contract orders. The testimony of Ty Livingston confirmed that the manufacturing department at Petroquip was always behind schedule. When he was hired as Rebardi's replacement, he fired all employees in the manufacturing department and started with a whole new staff. It is undisputed the expedited services rendered by Metal Coatings were requested by Petroquip and essential to Petroquip

5

fulfilling its obligation to third party customers. Nevertheless, Petroquip submitted price quotes from Webco, another coating company, apparently in an effort to show Metal Coatings' charges were unfair under the circumstances. While the Webco price quotes reflected prices below Metal Coating, Petroquip did not produce any documentary evidence or testimony that the Webco prices reflected service comparable to Metal Coatings. When questioned regarding the Webco price quotes, Ty Livingston admitted he has limited knowledge of the coating business, has not done a market analysis of coating costs, cannot testify that Metal Coatings invoices did not reflect expedited work and cannot testify that Metal Coatings charged more than other companies for the same work. Further, Bill Darnell, president of Petroquip, testified that he was aware when Rebardi was hired that he was a part-owner of Metal Coatings. In fact, he advised Rebardi to use Metal Coatings. He has no knowledge that Metal Coatings overcharged on invoices or whether the work was designated for expedited service. We have reviewed the record and are satisfied Petroquip will not be able to provide sufficient evidence to prevail on its reconventional and third party demand, namely by proving the invoices charged by Metal Coatings were not for expedited work and Rebardi and Metal Coatings engaged in fraud and deceptive practices. Accordingly, we reverse the decision of the trial court denying Metal Coatings' motion for summary judgment. We affirm the decision of the trial court granting Metal Coatings' motion for summary judgment on the open account.

The trial court awarded $5,000 in attorney fees. Louisiana Revised Statutes 9:2781 authorizes an award of reasonable attorney fees. The amount awarded is left to the sound discretion of the trial court and should not be disturbed on appeal absent a showing of abuse. *Metropolitan Reporters, Inc. v. Avery*, 95-504 (La.App. 5 Cir.

11/28/95), 665 So.2d 547. There are several factors to be considered including the ultimate result obtained, the nature of the case, the amount of time and skill involved and the ability of the party liable to pay. *Id.* We find no abuse of discretion in the trial court's award of $5,000 in attorney fees.

## DECREE

Based on the foregoing review of the record, we affirm the decision of the trial court granting Metal Coatings' motion for summary judgment on the open account. We reverse the decision of the trial court denying Metal Coatings' motion for summary judgment on Petroquip's reconventional and third party demand. We affirm the award of attorney fees in the amount of $5,000. All costs of this appeal are assessed to Petroquip Energy Services.

**AFFIRMED, IN PART; AND REVERSED, IN PART.**