NOT DESIGNATED FOR PUBLICATION

STATE OF LOUISIANA
COURT OF APPEAL, THIRD CIRCUIT

20-588

CACH, LLC

VERSUS

SONIA M. CHEATWOOD

**********

APPEAL FROM THE
NATCHITOCHES CITY COURT
PARISH OF NATCHITOCHES, NO. 30,644
HONORABLE FRED SCONYERS GAHAGAN, CITY COURT JUDGE

**********

CANDYCE G. PERRET
JUDGE

**********

Court composed of John D. Saunders, Candyce G. Perret, and Jonathan W. Perry, Judges.

AFFIRMED.

**Gregory McCarroll Eaton**
**Michael L. Lancaster**
**Eaton Group, Attorneys, LLC**
**Post Office Box 3001**
**Baton Rouge, LA   70821-3001**
**(225) 378-3159**
**COUNSEL FOR PLAINTIFF/APPELLEE:**
    **Cach, LLC**

**Garth J. Ridge**
**251 Florida Street, Suite 301**
**Baton Rouge, LA   70801**
**(225) 343-3700**
**COUNSEL FOR DEFENDANT/APPELLANT:**
    **Sonia M. Cheatwood**

**PERRET, Judge.**

Defendant, Sonia Cheatwood ("Ms. Cheatwood"), appeals from the trial court's grant of summary judgment in favor of the plaintiff, Cach, LLC ("Cach"), a debt buyer, in a suit for an unpaid loan balance. For the following reasons, we affirm the trial court judgment.

**FACTS:**

On September 17, 2018, Cach filed a petition against Ms. Cheatwood for sums allegedly due on a revolving line of credit issued through Household Finance Corporation II ("Household Finance"), which was allegedly assigned to Cach. Specifically, Cach alleged that Ms. Cheatwood defaulted on her loan and owes it a balance of "$9,316.60, together with 5% interest from date of judgment, and attorney's fees in the amount of 25% of the total of both principal and interest, and all costs of these proceedings[.]" Cach alleged in the petition that it is "the owner of all rights, title and interest in this receivable [that was originally] issued through [Household Finance.]" Attached to the petition was a Request For Admission of Fact. Ms. Cheatwood answered the petition by filing a general denial on October 9, 2018, and did not assert any affirmative defenses.

On September 6, 2019, after conducting discovery, Cach filed a Motion and Memorandum for Summary Judgment. In support of the motion for summary judgment, Cach attached the following pertinent documents to its memorandum: (1) Ms. Cheatwood's answer; (2) a copy of the petition; (3) a copy of the request for admission of fact; (4) Ms. Cheatwood's responses to the request for admission of fact, interrogatories, and request for genuineness of documents and request for production of documents; (5) an August 25, 2018 debt collector letter sent to Ms. Cheatwood on behalf of Cach; (6) a copy of Nancy Gosnell's affidavit of facts and purchase of account by Cach, dated July 12, 2019; (7) a copy of Ms. Cheatwood's

account summary report, dated July 11, 2018, which included a copy of the Assignment and Bill of Sale between Springleaf Finance, Inc. and Cach, dated July 13, 2016, as well as copies of Ms. Cheatwood's business records from Cach and the original creditor, Household Finance; (8) a copy of the Personal Credit Line Account Agreement, dated, August 29, 2006, between Ms. Cheatwood and Household Finance; and (9) a copy of the Revolving Loan Transaction History, beginning from August 29, 2006 through July 19, 2016.

Nancy Gosnell's affidavit provided the following pertinent information regarding the sale of the account from Household Finance to Springleaf Finance, Inc. and thereafter the assignment of Ms. Cheatwood's account from Springleaf Finance, Inc. to Cach on July 18, 2016:

1. I am an authorized representative of CACH, LLC ("Plaintiff") and I have access to Plaintiff's books and records, including electronic records ("Business Records"), relating to the account ("Account") of Sonia M. Cheatwood. The last four digits of the Account number are [3345]. In my position, I have personal knowledge regarding Plaintiff's procedures for creating and maintaining its Business Records, including its electronic computer records, and its procedures relating to the purchase and assignment of consumer credit accounts. Plaintiff's Business Records were made in the regular course of business and it was the regular course of such business to make the Business Records. The Business Records were made at or near the time of the events recorded and are reliable. Based on my knowledge of Plaintiff's Business Records, I have personal knowledge of the facts set forth in this affidavit.

2. On or about 07/18/2016, Plaintiff purchased or was assigned the Account from Springleaf Finance, Inc. (the "Purchase"). At that time, Springleaf Finance, Inc. assigned all of its interest in the Account, including the right to any proceeds from the Account, to Plaintiff. As part of the Purchase, Business Records relating to the Account were transferred to Plaintiff. Following the Purchase, those Business Records were maintained in the ordinary course of Plaintiff's business.

3. This account was originated by Household Finance Corporation II.

4. At this time, Defendant owes $9,316.60 on the Account. This amount includes the charge-off balance of $9,316.60, post-charge-off

2

interest of $0.00, and costs of $0.00, less post-charge-off credits or payments made by or on behalf of the Defendant of $0.00.

5.      All documents attached hereto are true and correct copies of the original, being a reproduction from the records maintained by Plaintiff.

On November 19, 2019, Ms. Cheatwood responded by filing a memorandum in opposition to Cach's motion for summary judgment.  In support of the opposition, Ms. Cheatwood attached her own affidavit wherein she stated the following:

1.      I am the defendant in the above-referenced matter and was formerly known as Sonia M. Cheatwood.

2.      I had a revolving line of credit issued by Household Finance Corporation II.

3.      I do not know what the balance owed on this account is, if any, but there were charges on this account and payments to the account during its existence.

4.      There was a written contract for this account.

5.      I have never had an account with the plaintiff CACH, LLC ("plaintiff") and deny that plaintiff owns the account sued on herein.

6.      I do not owe anything to plaintiff.

On December 2, 2019, Cach filed a reply to Ms. Cheatwood's opposition for summary judgment arguing that it has "provided a true and correct copy of the original written contract, has shown ownership of the debt by a preponderance of evidence, namely, assignment documents, letter, and statements, and that money is owed on the account."  Cach argues that Ms. Cheatwood's "sworn statement that she has no knowledge of any transfer of the account to [Cach] does not negate the evidence supplied by [Cach] that it is the owner of the account."  Thus, Cach alleges that Ms. Cheatwood failed to raise any genuine issues of material fact and that judgment should be rendered in favor of it as the creditor.

3

After a hearing on December 4, 2019, the trial court rendered judgment in favor of Cach "in the full sum of $9,316.60, together with 5% interest from date of judgment, and attorney's fees in the amount of 25% of the total of both principal and interest, and all costs of these proceedings, subject to a credit of $.00."  In his reasons for judgment, the trial judge stated, in pertinent part:

> [Ms. Cheatwood], in her brief, argues that the affidavit of fact executed by a Nancy Gosnell on July 12, 2019 was insufficient.  The Court disagrees.  It clearly states that [Nancy Gosnell] had personal knowledge of the facts contained in the affidavit, including the purchase of Ms. Cheatwood's account by [Cach] and that the balance due on the account was $9,316.[60].  She also avers that she had access to all of [Cach]'s business records in order [to] prepare the affidavit.
>
> Again, [Ms. Cheatwood] did not file anything in defense of the Motion For Summary Judgment that would create a genuine issue as to material fact.  The Court rules that the affidavit of correctness as well as the multiple documents filed with the motion is sufficient to show that there is no genuine issue of material fact, and that [Cach] is entitled to judgment as a matter of law.

Ms. Cheatwood now appeals this final judgment alleging the following three assignments of error:

> 1. The Trial Court erred in granting plaintiff-appellee['s] summary judgment when the affidavit submitted was not based on personal knowledge, the documents attached to the affidavits were not identified in the affidavit and were therefore unverified, and the affiant did not show she had any personal knowledge of the account, the recordkeeping, bookkeeping, nor accuracy of the information contained therein.
>
> 2. The Trial Court erred in granting plaintiff-appellee['s] summary judgment when it failed to prove it owned the alleged debt sued upon, and failed to prove the amount owed.
>
> 3. The Trial Court erred in granting plaintiff-appellee['s] summary judgment when there was an affidavit controverting plaintiff's claims, specifically ownership of the account, the amount claimed and the contract sued upon.

4

**STANDARD OF REVIEW:**

An appellate court reviews a trial court's granting of a motion for summary judgment de novo. *Duncan v. U.S.A.A. Ins. Co.*, 06-363 (La. 11/29/06), 950 So.2d 544. Under this standard of review, the appellate court uses the same criteria as the trial court in determining if summary judgment is appropriate: whether there is a genuine issue of material fact and whether the mover is entitled to judgment as a matter of law. *Id.*

A motion for summary judgment shall be granted "if the motion, memorandum, and supporting documents show that there is no genuine issue as to material fact and that the mover is entitled to judgment as a matter of law." La.Code Civ.P. art. 966(A)(3). "The only documents that may be filed in support of or in opposition to the motion are pleadings, memoranda, affidavits, depositions, answers to interrogatories, certified medical records, written stipulations, and admissions." La.Code Civ.P. art. 966(A)(4).

Louisiana Code of Civil Procedure Article 966(D)(1) discusses the mover's burden of proof on summary judgments, and states:

> The burden of proof rests with the mover. Nevertheless, if the mover will not bear the burden of proof at trial on the issue that is before the court on the motion for summary judgment, the mover's burden on the motion does not require him to negate all essential elements of the adverse party's claim, action, or defense, but rather to point out to the court the absence of factual support for one or more elements essential to the adverse party's claim, action, or defense. The burden is on the adverse party to produce factual support sufficient to establish the existence of a genuine issue of material fact or that the mover is not entitled to judgment as a matter of law.

**DISCUSSION:**

Louisiana Revised Statute 9:2781(A) sets forth the procedures for suits on open accounts and provides, in pertinent part:

When any person fails to pay an open account within thirty days after the claimant sends written demand therefor correctly setting forth the amount owed, that person shall be liable to the claimant for reasonable attorney fees for the prosecution and collection of such claim when judgment on the claim is rendered in favor of the claimant. Citation and service of a petition shall be deemed written demand for the purpose of this Section. If the claimant and his attorney have expressly agreed that the debtor shall be liable for the claimant's attorney fees in a fixed or determinable amount, the claimant is entitled to that amount when judgment on the claim is rendered in favor of the claimant. Receipt of written demand by the person is not required.

Louisiana Revised Statutes 9:2781(D) further defines an open account as "any account for which a part or all of the balance is past due, whether or not the account reflects one or more transactions and whether or not at the time of contracting the parties expected future transactions."

In order to sustain an action on open account, "the creditor must first prove the account by showing that the record of the account was kept in the course of business and by introducing evidence regarding its accuracy." *Metal Coatings, L.L.C. v. Petroquip Energy Serv., L.P.*, 06-1118, p. 4 (La.App. 3 Cir. 11/21/07), 970 So.2d 695, 698. Once the creditor makes this prima facie showing, "the burden shifts to the debtor to prove the inaccuracy of the account or to prove the debtor is entitled to certain credits." *Id.*

Ms. Cheatwood does not dispute that she had a contract for a revolving line of credit with the original creditor (Household Finance) and that charges and payments were made on the account but asserts that Nancy Gosnell's affidavit is insufficient to meet the business records exception to hearsay and that Cach failed to prove the amount owed or that it actually owned the alleged debt. Ms. Cheatwood additionally argues that her affidavit created a genuine issue of fact that warranted a trial in this matter.

6

*Nancy Gosnell's Affidavit:*

In her first assignment of error, Ms. Cheatwood argues that the trial court erred in granting Cach's summary judgment when Nancy Gosnell's affidavit was insufficient as a matter of law. Specifically, Ms. Cheatwood argues that "Ms. Gosnell's affidavit does not provide the nexus between her alleged personal knowledge and the assertions in her affidavit since her knowledge is based only upon business records of CACH, and not Springleaf and Household." Ms. Cheatwood alleges that Ms. Gosnell's "information is from inadmissible and unauthenticated records from Springleaf and Household, which is hearsay with hearsay."

Louisiana Code of Civil Procedure Article 967(A) requires that affidavits filed in support of a motion for summary judgment "be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein." Cach relied on Ms. Gosnell's affidavit and the attachments referred to therein to prove its open account with Ms. Cheatwood. Thus, Ms. Gosnell was required to show that her affidavit was based on personal knowledge, that the facts she set forth were admissible in evidence, and that she was competent to testify to the facts contained in the affidavit.

Based on the applicable law, we find that Ms. Gosnell's affidavit was sufficient to prove Ms. Cheatwood's open account and her indebtedness. Ms. Gosnell's affidavit provides that she was "an authorized representative of CACH[,]" and that in her position with Cach, she had "personal knowledge regarding [Cach]'s procedures for creating and maintaining its Business Records, including its electronic computer records, and its procedures relating to the purchase and assignment of consumer credit accounts." Ms. Gosnell's affidavit further verified

the balance Ms. Cheatwood owed Cach as $9,316.60 and testified that Cach "purchased or was assigned" Ms. Cheatwood's account on July 18, 2016.

Although Ms. Cheatwood argues that the documents attached to Ms. Gosnell's affidavit "were not identified in the affidavit and were therefore unverified, and the affiant did not show she had any personal knowledge of the account, the recordkeeping, bookkeeping, nor accuracy of the information contained therein[,]" we find no merit to this argument. For the reasons stated below, we find that the admission of the third-party documents was proper when received and held by Ms. Gosnell in her regular course of business.

The Louisiana Code of Evidence Article 801(C) defines hearsay as "a statement, other than one made by the declarant while testifying at the present trial or hearing, offered in evidence to prove the truth of the matter asserted." However, the business records exception to the hearsay rule is contained in La.Code Evid. art. 803(6), which provides in pertinent part:

> The following are not excluded by the hearsay rule, even though the declarant is available as a witness:
>
> . . . .
>
> (6) **Records of regularly conducted business activity**. A memorandum, report, record, or data compilation, in any form, including but not limited to that which is stored by the use of an optical disk imaging system, of acts, events, conditions, opinions, or diagnoses, made at or near the time by, or from information transmitted by, a person with knowledge, if made and kept in the course of a regularly conducted business activity, and if it was the regular practice of that business activity to make and to keep the memorandum, report, record, or data compilation, all as shown by the testimony of the custodian or other qualified witness, unless the source of information or the method or circumstances of preparation indicate lack of trustworthiness. This exception is inapplicable unless the recorded information was furnished to the business either by a person who was routinely acting for the business in reporting the information or in circumstances under which the statement would not be excluded by the hearsay rule.

8

Louisiana jurisprudence has held that the wording of La.Code Evid. art. 803(6) does not preclude the introduction of incorporated business records originally generated by another business, if properly authenticated and determined to be trustworthy by the trial court. *See Bishop v. Shaw*, 43,137, p. 7 (La.App. 2 Cir. 3/12/08, 978 So.2d 568, 573 (wherein the court found "[t]hird party invoices that are received and maintained in the course of business are considered incorporated business records and are admissible under the business records exception to the hearsay rule under circumstances which demonstrate trustworthiness"); and *Burdette v. Drushell*, 01-2494 (La.App. 1 Cir. 12/20/02), 837 So.2d 54, *writ denied*, 03-0682 (La. 5/16/03), 843 So.2d 1132 (wherein the court found that admission of third-party documents was proper when received and held by a party in its regular course of business under circumstances which demonstrate trustworthiness.)

Again, we find that Ms. Gosnell's affidavit sufficiently authenticates the records transferred to Cach from Springleaf, Inc. and Household Finance. Ms. Gosnell's affidavit maintained that she has access to Cach's "books and records, including electronic records ("Business Records"), relating to the account . . . of Sonia M. Cheatwood" and that she has "personal knowledge regarding [Cach's] procedures for creating and maintaining its Business Records, including its electronic computer records, and its procedures relating to the purchase and assignment of consumer credit accounts." Ms. Gosnell further stated that Cach's "Business Records were made in the regular course of business and it was the regular course of such business to make the Business Records[,]" and that "[t]he Business Records were made at or near the time of the events recorded and are reliable." We find that based on Ms. Gosnell's personal knowledge of Cach's business records along with her bookkeeping knowledge of Ms. Cheatwood's

9

account, she exhibited that the third-party documents were properly incorporated into Cach's business records. Accordingly, we find no error in the trial court's reliance on Ms. Gosnell's affidavit, and the business records attached, wherein Ms. Gosnell testified that she had personal knowledge as a bookkeeper that the financial documents at issue were properly incorporated into the ordinary course of Cach's business.

**Cach's Prima Facie Case:**

In her second assignment of error, Ms. Cheatwood argues that the trial court erred in granting Cach's "summary judgment when it failed to prove it owned the alleged debt sued upon and failed to prove the amount owed." Ms. Cheatwood again argues that Ms. Gosnell's "affidavit never discussed accounting and bookkeeping procedures of either Springleaf or Household Finance Corporation II" and that the "[d]ocuments from Springleaf and Household Finance Corporation II therefore are inadmissible hearsay and unauthenticated." In support of her argument, Ms. Cheatwood cites to *Cole Oil & Tire Co., v. Davis*, 567 So.2d 122, 129 (La.App. 2 Cir. 1990), for the proposition that records maintained by a prior business owner are not admissible as the business records of the new owner of a company and the new owner is not qualified to establish their admissibility as such under La.Code Evid. art. 803(6).

In *Cole Oil*, the plaintiff (Cole Oil) purchased the assets, including the accounts receivable, of Boss Oil. According to the records acquired by Cole Oil, the defendant (Tommy Davis) owed $8,021.85. Mr. Davis paid Cole Oil for what he purchased from Cole Oil, which was $5,000 of the balance, but did not pay Boss Oil's balance of $3,021.85. Cole Oil sued Mr. Davis on an open account to recover the remaining balance owed. The only document attached to the petition was an affidavit, prepared by the bookkeeper, "generally swearing that $3,021.85

was past due on the account." *Cole Oil,* 567 So.2d at 124. The itemized statement was not attached to the petition. Cole, plaintiff's president, was the only witness to testify at the trial, wherein he merely testified to the 1986 purchase of Boss Oil.

We find the facts of *Cole Oil* to be factually distinguishable from this case. Unlike Cole, who did not have personal knowledge of the record keeping practices or which invoices had or had not been paid by Mr. Davis, Ms. Gosnell had access to Cach's books and records and also had the requisite knowledge of its record keeping procedures of the business. Ms. Gosnell testified that the business records transferred to Cach as a result of the purchase and assignment were maintained in Cach's regular course of business. Ms. Gosnell did not seek to merely introduce the third-party records but rather to validate the fact that they were incorporated into her own business records at Cach. Further, unlike in *Cole Oil* where the only attachment to the petition was an affidavit stating the amount due on the account, Cach provided dozens of pages of business records confirming the account information and supporting the balance owed.

Accordingly, based on our de novo review of the record, we find that Cach made a prima facie case for its entitlement to payment on the open account. The burden then shifted to Ms. Cheatwood to prove the inaccuracy of the amount owed ($9,316.60) or entitlement to certain credits.

***Ms. Cheatwood's Affidavit***:

In her third assignment or error, Ms. Cheatwood argues that the trial court erred in granting Cach's summary judgment "when there was an affidavit controverting plaintiff's claims, specifically ownership of the account, the amount claimed and the contract sued upon." Ms. Cheatwood argues that the motion for summary judgment should have been denied solely on the basis of her affidavit. We find no merit to this argument.

11

Ms. Cheatwood provided a self-serving affidavit that was unsupported by any documentary evidence. Although Ms. Cheatwood stated in her affidavit that she did not "know what the balance owed on this account [was,]" she did agree that there had been "charges on this account and payments to the account during its existence." She also agrees with Cach that she "had a revolving line of credit issued by Household Finance[,]" and that there "was a written contract for this account."

We agree with Cach that Ms. Cheatwood did not satisfy her burden of proof to produce factual support sufficient to establish the existence of a genuine issue of material fact or to show that Cach is not entitled to summary judgment as a matter of law. For these reasons, we find that summary judgment in favor of Cach was appropriate because Cach's petition was supported by unrefuted documentary evidence.

**DECREE:**

Having found that Cach carried its burden of proof on its claim against Ms. Cheatwood on an open account, and that there are no genuine issues of material fact that remain, we affirm the summary judgment in favor of Cach in the amount of $9,316.60. The costs of this appeal are assessed to defendant, Ms. Cheatwood.

**AFFIRMED.**

This opinion is NOT DESIGNATED FOR PUBLICATION.
Uniform Rules—Courts of Appeal, Rule 2-16.3.

12